## John Joseph, Administrator, Appellee, v. Peoria & Pekin Union Railway Company, Appellant.

### Gen. No. 5,817.

1. MASTER AND SERVANT, § 695*—*when evidence sufficient to sustain recovery for death of coal shoveler resulting from switching.* In an action for the death of a railroad employe alleged to have been caused by the negligence of the company in not warning deceased of the switching of a coal car while deceased was in the performance of his duties as a coal shoveler, evidence that deceased was performing the duties of his employment at the time of the accident and tending to show that he did not understand orders to leave the car, *held* sufficient to sustain a verdict for the plaintiff.

2. WITNESSES, § 286*—*what party entitled to impeach witness as to independent matters elicited on cross-examination.* Where a witness testifies as to independent matters, on cross-examination as to such matters he is not a witness of the party calling him so as to preclude the party calling him from impeaching his testimony with reference thereto.

3. WITNESSES, § 286*—*when witness becomes a witness of party cross-examining him.* Where a witness is cross-examined as to matters not touched upon in the direct examination, the cross-examining party makes the witness his own as to such matters and cannot discredit him by showing prior contradictory statements in reference thereto; but the party by whom the witness was called may discredit him by showing such statements.

4. APPEAL AND ERROR, § 1482*—*when impeaching own witness not reversible error.* Error of court in permitting a party to impeach his own witness as to certain matters established by other evidence, *held* not reversible error.

Appeal from the Circuit Court of Peoria county; the Hon. LESLIE D. PUTERBAUGH, Judge, presiding. Heard in this court at the April term, 1913. Affirmed. Opinion filed October 17, 1913.

STEVENS, MILLER & ELLIOTT, for appellant.

QUINN, QUINN & McGRATH, for appellee.

Mr. JUSTICE CARNES delivered the opinion of the court.

Joseph Gibron, appellee's intestate, was in the em-

ploy of the appellant Railway Company as coal shoveler and with two other men engaged at night in unloading coal from a car through a trap in the bottom into a receptacle beneath the track; the process of unloading required the car to be moved after a part of its contents was discharged to bring the other part of the car over the opening beneath. Sometimes the workmen engaged in unloading the coal removed the car by hand, "pinching" it along to the required point; before doing this it was necessary and usual to brush the coal and dirt from the tracks so as to clear from obstructions the short space over which the car would move. At other times a switch engine was called in by the man in charge of the yards to move the car.

On the night in question, Gibron and his two companions were endeavoring to move the car into its second position and were prevented from doing so by two empty cars, previously unloaded, in the way. Crozier, the weighmaster, told the men not to try further to pinch the car, that an engine would come and move it and that they should go to the roundhouse and get their lunch and he would call them when the car was ready. The other two men went to the roundhouse as ordered; Gibron apparently started to go with them, but in a short time it was discovered that he was not with them and on looking for him he was found dead on the track, having been run over by the car moved by the engine. There was no witness to the accident; no one knows why Gibron was there at the time. It was evident he was on the track and under or near the car, perhaps in the act of clearing the track as had been done at times prior to moving the car by hand.

He was from Syria, had been in this country about eight months and had worked as a shoveler at this point on the night shift for about a month with the other two men that were with him the night of the accident. He could understand little English.

The theory of appellee is that deceased had gone into the hopper or had crawled under the car for the purpose of cleaning the coal from between the tracks, and that in so doing he was in the performance of his duty to his employer, as he understood it, and that the car was pushed upon him without warning.

The theory of appellant is that he was in the position where he was killed, not in the performance of his duty, but for some purpose of his own, or by chance, and that he was not only warned of the approach of the engine, but was also expressly ordered to leave the place at the time in question.

This action is brought to recover for that death and this is the second jury trial. At the first trial there was a verdict for five thousand dollars which was set aside by the trial court; at the second trial there was also a verdict of five thousand dollars, upon which appellee had judgment from which this appeal is taken. There is no question about the amount of the verdict. It is claimed by appellant that there is no evidence showing, or tending to show, deceased was at the place in question in the performance of his duty incident to his employment, or that he was in the exercise of due care for his own safety. It is claimed that the order of the foreman to leave the work and go to the roundhouse not regarded by deceased, was of itself a complete defense to the action, and the court was asked to so instruct the jury; but he modified the instruction so that the jury were informed that the order was a defense if the deceased understood it, and the question is fairly presented whether the order to be availed of as a defense must have been understood by the deceased. Appellant claims that the Court erred in so modifying the instruction and cites no authority, but argues that the evidence shows that deceased did understand the order and therefore the Court erred in incorporating that element in the instruction. Appellant does not argue, and we assume it is not true, that an order from a master to a servant, which the servant

did not understand and which the master, in the exercise of reasonable care might know that he would not understand, would be of any effect in considering a question like this of the master's liability.   There is evidence in the record tending to show that deceased did understand the order and there is evidence tending to show that he did not, and nothing in the evidence as we read it, or as suggested by counsel, that accounts for his being back upon the track in the position he was in when he was killed if he did understand the order.   The fact that he was, in the night time, on this track, with no other purpose shown or suggested than to clear the track so that the car could move, is, of itself, evidence from which a jury might well be expected to find that he did not understand the direction to go to the roundhouse where it was warm, and of his own choice stay on the track.   On the other hand it is difficult to account for his being there cleaning the track; there is evidence tending to show that he would not naturally have been in the position which he was in when he was struck by the car if he had been engaged in cleaning the track; that there was no broom or other implement near him, such as was commonly used for that purpose.   The evidence leaves the question of deceased's position at the time and place in question somewhat of a mystery; but there is enough evidence tending to show that he was there in the performance of his duty, or in what he reasonably might have supposed was the performance of his duty to prevent the trial court from taking that question from the jury, and to sustain the jury's finding thereon, and on the question, whether he did or did not understand the order, the finding of the jury should not be disturbed, especially after two juries have reached the same conclusion from presumably substantially the same evidence.

Appellee called William H. Conley, defendant's roundhouse foreman, as a witness and asked him whether he gave any orders as roundhouse foreman

with reference to a switch engine going in on the switch at the time in question and Conley answered "Yes, he gave an order about two o'clock in the morning and the switch engine run in on the track." On cross-examination appellant asked him to whom he gave the order and he answered "To the yard master," naming him. Then he was asked, "Who else did you notify about the switch engine coming down?" And he answered that he notified the men working there, naming them and including Gibron, and said that he told them to get away from there and he would have the switch engine come and move the car and would call them when they got ready, and stated that Gibron was standing five or ten feet from him when he told them to go, and they stopped pinching the car and apparently made arrangements to go. On redirect examination he stated that he had testified on the former trial of the case that he did not remember what he then said about telling Gibron that they were going to back the car down. Appellant objected to the inquiry about what the witness testified to on the former trial on the ground that it was an effort to impeach their own witness, and the court permitted the answer on the statement of appellee that he was surprised in the testimony of the witness; and he was asked the categorical question if he had been asked at the former trial "Had notice been sent to these men (meaning the coal shovelers) with reference to moving the car to the north to be unloaded" and whether he answered "No, I didn't give any orders for it, the man that runs the coal chute gives those orders." And after his answer that he did not remember, appellee was permitted to prove by the court reporter, over objections of appellant, that the question was so asked and so answered. We are of opinion that this was error if the witness in testifying on that subject of notifying the men is to be regarded as appellant's witness, but it seems to us clear that his examination as to what notice, if any, he gave to the three coal shovel-

ers was not proper cross-examination to the evidence developed on his examination in chief as to his giving the order to the yard master to have the engine sent down there; that the order to one department to send an engine to a given point, and the direction to men employed at that point to leave and go away, are two quite distinct and separate matters, and that appellant, if objection had been made, would have been compelled to desist from that line of cross-examination, and if it desired the testimony, call the witness as its own. The question is whether a witness, cross-examined as to some matter not touched upon in the direct examination and giving competent evidence in the course of such cross-examination is to be treated as the witness of the party cross-examining him, and therefore not liable to impeachment by him and liable to impeachment by the other party, or whether on cross-examination he remains the witness of the party calling him and is subject to impeachment as to such testimony by the party cross-examining him and not subject to impeachment by the party calling him. We are referred to no Illinois authorities on this question and know of none, but it seems reasonable, to put an extreme case, if a witness should be called by a party to prove some material fact, like the signature to an instrument, and then taken up by the other party on a so-called cross-examination as to other and disconnected matters, that as to those matters he should in fairness be treated as the witness of the party voluntarily calling them out and using him as a witness thereto. In other words the question is, was the matter testified to by a witness on cross-examination, proper cross-examination, or was it an independent question and matter, and if the last, then as to that matter he should be treated as the witness of the cross-examining party and subject to impeachment by the other party. The following quotation is found in the text of Cyc.: "Where a witness is cross-examined as to matters not touched upon in the direct examination,

the cross-examining party makes the witness his own as to such matters and cannot discredit him by showing prior contradictory statements in reference thereto; but the party by whom the witness was called may discredit him by showing such statements." 40 Cyc. 2693. See also Wigmore on Evidence, vol. 2, sec. 914.

While we regard it error to permit the impeachment of a party's own witness even in case of surprise, yet in this case it is doubtful whether it should be regarded as reversible error, even if the correct conclusion be that the trial court permitted appellee to impeach his own witness. There is no doubt that Crozier, the weighmaster, did tell the men to leave the place, and this makes it less material whether Conley did or did not so tell them. The jury must have concluded that Gibron was told to leave the place and go to the roundhouse, and that he did not understand the order, and that appellant knew or in the exercise of ordinary care should have known, that he would not understand the order, and therefore was negligent in not doing something further to make him understand and observe it. We are of the opinion that appellee was impeaching, not his own, but appellant's witness; and are inclined to the opinion that if it were to be held that he was impeaching his own witness, it was not on this record reversible error. The evidence was conflicting and the question is whether the jury erred in weighing it. Judging only from the record, we would be much inclined to find contrary to the verdict of the jury. But it is familiar doctrine that we must give weight to the consideration that not only the jury but also the trial judge had superior advantages for determining the weight and credibility of the evidence, and we do not feel warranted in disturbing the judgment, based as it is on a second jury trial with the verdict the same in both trials.

The judgment is affirmed.

*Affirmed.*